MAYBERRY, Adm'x, v. FOSTER.

No. 30486. April 11, 1944.

Rehearing Denied May 9, 1944.

*148 P. 2d 983.*

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for plaintiff in error.

Harry O. Glasser and W. J. Otjen, both of Enid, for defendant in error.

HURST, J. The plaintiff, Essie C. Foster, sued Dr. S. N. Mayberry and Baptist Hospital Association, a corporation, to recover damages for personal injuries sustained by her when she fell into an open elevator shaft of a hospital in Enid. The court sustained a demurrer

to the petition filed by the Baptist Hospital Association, and that company then dropped out of the case, leaving the case to proceed only against Dr. Mayberry. A verdict was returned in favor of the plaintiff and against Dr. Mayberry on which judgment was rendered. Soon thereafter Dr. Mayberry died, and the judgment was revived in the name of the administratrix of his estate, who appealed.

The plaintiff in error makes many assignments of error, but we believe they may be grouped under three main propositions: (1) That no primary negligence by those in charge of the hospital was established by the evidence of the plaintiff, (2) that the evidence is insufficient to establish that the defendant Dr. Mayberry was in charge of the hospital or that he was the owner or manager of it at the time of the accident, and (3) that instruction No. 11 invades the province of the jury and is violative of section 6, art. 23, of the State Constitution.

Under the view we take of the record, we find it necessary to discuss only the second proposition.

The record discloses that the hospital in question was built by Dr. Mayberry about 1907, and from the time it was built until October 1, 1930, it was operated by him and was known an University Hospital. On September 27, 1930, Dr. Mayberry entered into a written contract with the Baptist Hospital Association, a corporation, under the terms of which he sold said hospital and equipment to said association for a consideration of $130,000. Part of the consideration was the assumption of a $50,000 first mortgage held by Phillips University. The remaining $80,000 was represented by a note bearing interest at the rate of 6% per annum and secured by a mortgage on the hospital and equipment, executed by the association to Dr. Mayberry. The mortgage was duly recorded September 29, 1930. A deed from Mayberry and wife to the association was executed and delivered, and was duly recorded on October 9, 1930.

The record discloses that the association paid Dr. Mayberry some interest each year, which was credited on the note, but it paid him the full amount of interest due the first year only. The note and mortgage became due September 27, 1935. The accident occurred on May 19, 1937. Dr. Mayberry filed foreclosure proceedings against the association on July 30, 1938, and on that date a receiver was appointed by the court who took charge of the property. A decree of foreclosure was entered on November 23, 1938, and the property was sold to Dr. Mayberry on February 7, 1939, for $40,000, $30,000 for the real estate and $10,000 for the personal property and equipment. The sale was confirmed on February 8, 1939.

It is contended by the defendant that from October 1, 1930, when it is claimed the association took possession under the contract, until February 8, 1939, Dr. Mayberry was not in control of the hospital so as to render him liable for the action complained of. It is the contention of the plaintiff that the whole transaction between Dr. Mayberry and the association, whereby it is claimed that the property was transferred in 1930 to the association, was a sham and subterfuge in order to enable the property to escape ad valorem taxation, and to relieve the hospital from liability for negligence on the theory that it was a charitable institution.

The burden rested upon the plaintiff to introduce evidence reasonably tending to show that the sale of the hospital to the association was a subterfuge and that Dr. Mayberry was in fact operating the hospital at the time of the accident. And, of course, if such evidence was introduced, it became a question of fact for the jury to determine. The parties are in disagreement as to whether such evidence was introduced.

Among the circumstances relied upon by the plaintiff were these provisions of the contract: That Dr. Mayberry reserved the right to keep his office in the hospital for a period of six months rent free; that the association agreed that Dr.

Mayberry be designated as chief of the surgical staff of the hospital, and that the association would send patients to him, who were not under the charge of any surgeon or physician, so as to promote his practice; that while Dr. Mayberry continued as chief of the surgical staff, he should be consulted as to the employment of a manager, nurses, internes and other help in the hospital, and that no one would be employed in such capacity who was objectionable to him; that while any portion of the principal debt from the hospital to Dr. Mayberry remained unpaid, he should have the right to attend all meetings of the trustees of the hospital and of the executive committee and to offer his advice upon any matter of policy in the management and operation of the hospital; that Dr. Mayberry should be liable for the payment of the first half of the 1930 taxes and the association should be liable for the payment of the second half of said taxes, unless the association could arrange to have the 1930 taxes remitted.

The plaintiff also argues that the fact that the sale and transfer was a subterfuge is established by the evidence, (a) that a niece of Dr. Mayberry, who was office manager of the hospital at the time of the transfer, remained manager until 1937, at which time she was succeeded by the son-in-law of Dr. Mayberry, thus showing, so it is contended, that in fact Dr. Mayberry exercised control over the hospital, (b) that the interest charge of $7,800 per year on the two mortgages could not possibly be earned and paid by the operations of the hospital, and (c) that Dr. Mayberry continued to maintain his office in the hospital after the expiration of six months, although he paid rent. Plaintiff also attempted to show that only three members of the board of trustees of the Baptist Hospital Association sanctioned the transaction, as tending to prove that it was not made by the board of trustees, but the trial court refused to admit such evidence.

After carefully considering the voluminous record and briefs, we are of the opinion that the circumstances relied upon by the plaintiff as tending to prove that the transfer was a sham and pretense, and that in fact Dr. Mayberry was operating the hospital at the time of the accident so as to make him liable for the accident, are insufficient to justify submitting the question to the jury. We think the circumstances are not inconsistent with a good faith transfer. At most, the terms of the contract relied upon show that Dr. Mayberry was cautious and was seeking to safeguard his own interest. There is no evidence in the record that after the contract was entered into, and before he purchased the property at the foreclosure sale, Dr. Mayberry in fact directed and controlled the operations of the hospital. The deed, note, mortgage, and foreclosure proceedings are regular in form, and there is nothing connected with them that casts doubt upon the good faith of the parties. We have carefully examined the authorities relied upon by the plaintiff and do not find any of them helpful or contrary to the conclusion we have reached.

We conclude that the trial court should have sustained the motion of the defendant for a directed verdict. Farmers Educational and Co-operative Union of America v. Eakins, 188 Okla. 324, 108 P. 2d 182.

Reversed for new trial.

CORN, C.J., GIBSON, V.C.J., and OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.